IN THE UNITED STATE DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GUANGZHOU LUCK COMMERCE CO. LTD., <br><br> Plaintiff, <br><br> v. <br><br> INDIVIDUALS, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS ON SCHEDULE "A," <br><br> Defendants. | Case No.: 1:23-cv-1876 <br><br> Judge Jorge L. Alonso <br><br> Magistrate Judge Heather K. McShain |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR ENTRY OF DEFAULT JUDGMENT**

Plaintiff, Guangzhou Luck Commerce Co. Ltd., ("Plaintiff"), submits the following memorandum in support of its Motion for Entry of Default Judgment under Fed. R. Civ. P. 55(b), against the defendants identified on Schedule A to the Amended Complaint (collectively, the "Defaulting Defendants"), with exceptions to certain defendants, based on Plaintiffs' action for trademark infringement, counterfeiting, false designation of origin and violation of Illinois Uniform Deceptive Trade Practices Act.

**I.     INTRODUCTION**

Plaintiff respectfully requests the Court to enter default judgment against the Defaulting Defendants pursuant to Fed. R. Civ. P. 55(a), awarding relief to Plaintiff. The Defaulting Defendants were properly served as per this Court's Order authorizing service by alternative means on June 15, 2023. Despite this, the Defendants failed to answer Plaintiff's Complaint or to otherwise appear in this action, and the Court should now grant default judgment.

**II.     STATEMENT OF FACTS**

1. Plaintiff has the exclusive license of enforcement of U.S. Trademark registrations, LELINTA (Reg. Nos. 5,223,837 and 6,232,730), SAYFUT (Reg. No. 4,881,066), FOCUSSEXY (Reg. No. 5,571,322), DODOING (Reg. No. 5,201,015), and YOULOVEIT (Reg. No. 5,567,134) (collectively "Plaintiff's Marks"), with all rights to enforce. The registrations are valid, subsisting, and in full force and effect. *See* Amended Complaint at ¶ 14 (Dkt. No. 2).

2. The LELINTA mark has been continuously in commerce since at least August of 2015, the SAYFUT mark continuously in commerce since at least March of 2015, the FOCUSSEXY mark continuously in commerce since at least January of 2017, the DODOING mark continuously in commerce since at least January of 2016, and the YOULOVEIT mark continuously in commerce since at least October of 2017. *See Id.* at ¶ 15.

3. Plaintiff files this action to stop online counterfeiters from injuring Plaintiff's Marks' reputation and goodwill by selling and/or offering for sale products in connection with Plaintiff's Marks. *See Id.* at ¶ 16.

4. Plaintiff's Marks are distinctive and identify the merchandise as goods from the Marks' owners. The registrations for Plaintiff's Marks constitute prima facie evidence of validity pursuant to 15 U.S.C. § 1057 (b). *See Id.* at ¶ 17.

5. Upon information and belief, Defendants have created Walmart.com seller accounts and designed them to appear to be selling genuine products by Marks' Owners, while selling counterfeit versions of Plaintiff Marks' products. They share several distinct and unique features such as usage of the trademarked names in the item listings, and product descriptions. This establishes a logical relationship between them suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. *See Id.* at ¶ 18.

6. Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within Illinois and in this Judicial District, through the operation of the fully interactive commercial websites and online marketplaces operating under the Wish stores. Each Defendant targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell infringing and/or counterfeit LELINTA, SAYFUT, FOCUSSEXY, DODOING, and YOULOVEIT products, to consumers within the United States, including Illinois and in this Judicial District. *See Id*. at ¶ 19.

7. The success of the LELINTA, SAYFUT, FOCUSSEXY, DODOING, and YOULOVEIT brands have resulted in their counterfeiting. Plaintiff has identified various products on Walmart.com, including from the Defendants as presented, which were offered, and continue to be offered, for sale, and import. Defendants counterfeit LELINTA, SAYFUT, FOCUSSEXY, DODOING, and YOULOVEIT products and offer them to consumers in this Judicial District and throughout the United States. *See Id*. at ¶ 20.

8. Defendants have not been licensed or authorized to use the LELINTA, SAYFUT, FOCUSSEXY, DODOING, and YOULOVEIT trademarks, and Defendants are not authorized retailers of genuine LELINTA, SAYFUT, FOCUSSEXY, DODOING, and YOULOVEIT products. *See Id*. at ¶ 21.

9. In addition to operating under multiple fictitious names, Defendants in this case and defendants in other online counterfeiting cases use a variety of other methods to evade enforcement efforts including simply registering new online marketplace accounts once they receive notice of a lawsuit and operating multiple credit card merchant accounts to evade collection efforts by Plaintiff armed with enforceable judgments. Upon information and belief, Defendants maintain

off-shore bank accounts and regularly move funds from their online money accounts to off-shore bank accounts outside the jurisdiction of this Court. *See Id*. at ¶ 22.

10. Defendants, without any authorization or license, have knowingly and willfully used and continue to use Plaintiff's Marks in connection with the advertisement, distribution, offering for sale, and sale of counterfeit LELINTA, SAYFUT, FOCUSSEXY, DODOING, and YOULOVEIT products into the United States and Illinois over the Internet. *See Id*. at ¶ 23.

11. Defendants' use of Plaintiff's Marks in connection with the advertising, distribution, offering for sale, and sale of counterfeit LELINTA, SAYFUT, FOCUSSEXY, DODOING, and YOULOVEIT products, including the sale of counterfeit LELINTA, SAYFUT, FOCUSSEXY, DODOING, and YOULOVEIT products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff. *See Id*. at ¶ 29.

11.
12. On March 25, 2023, Plaintiff filed its Original Complaint (Dkt. No. 1) and its Amended Complaint (Dkt. No. 2).

13. On March 25, 2023, Plaintiff filed its *Ex Parte* Motion for Entry of a Temporary Restraining Order (Dkt. No. 3) and Motion for Alternative Service (Dkt. No. 4).

14. On May 23, 2023, this Court granted Plaintiff's Motion for Alternative Service and Sealed Temporary Restraining Order (Dkt. No. 13).

17. On June 15, 2023, Plaintiff served the Defendants via email with copies of the Complaint and Summons.

18. Defendants' answers or motions under Fed. R. Civ. P. 12 were, thus, due on July 6, 2023.

19. Defendants have failed to file an answer or otherwise respond within the time allotted by Fed. R. Civ. P. 12.

20. Defendants are not a minor or incompetent person.

21. Defendants are not in the U.S. military.

### III. ARGUMENT

#### a. Jurisdiction and Venue are Proper in this Court

This Court may properly exercise jurisdiction over Plaintiff's claims for trademark and copyright infringement as those matters arise under federal law as per 15 U.S.C. § 1051 *et seq.* and 28 U.S.C. §§ 1331 and 1338. In addition, this Court may properly exercise jurisdiction over Plaintiff's claims that arise under Illinois law pursuant to 28 U.S.C. § 1367, as those claims are so tied to Plaintiff's federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts. Additionally, venue is proper in this matter pursuant to 28 U.S.C. § 1391. Furthermore, this Court has personal jurisdiction over the Defendants since the Defendants have committed acts of infringement within this judicial district. *See* Amended Complaint at ¶ 2 (Dkt. No. 4).

#### b. Law Regarding Default Judgments

Federal Rule of Civil Procedure 55 "sets forth a two-step process for a party seeking default judgment." *NCAA v. Kizzang LLC*, 304 F. Supp. 3d 800, 804 (S.D. Ind. 2018) (*citing McCarthy v. Fuller*, 2009 U.S. Dist. LEXIS 100920, 2009 WL 3617740, *1 (S.D. Ind. 2009), *Lowe v. McGraw-Hill Companies, Inc.*, 361 F.3d 335, 339 (7th Cir. 2004)). "First, the plaintiff must obtain an entry of default from the Clerk. Fed. R. Civ. P. 55(a). Second, after obtaining that entry, the plaintiff may seek an entry of default judgment." *NCAA*, 304 F. Supp. 3d at 805.

#### c. Entry of Default is Proper

Federal Rule of Civil Procedure 55(a) governs the entry of default. Rule 55 states that "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). "Although Rule 55(a)... refers to entry of default by the clerk, it is well-established that a default also may be entered by the court." *Deckers Outdoor Corp. v. Doe*, No. 11 C 10, 2011 U.S. Dist. LEXIS 119448, at *6 (N.D. Ill. 2011) (*citing Breuer Elec. Mfg. Co. v. Toronado Sys. of Am., Inc.*, 687 F.2d 182, 185 (7th Cir. 1982)). As shown above, Defendants' answers or responses under Fed. R. Civ. P. 12 were due no later than July 6, 2023. *See also* Decl. Ge (Linda) Lei at ¶ 1(a), attached hereto as Exhibit A. This deadline has passed, and the Defendants have failed to file an answer or otherwise respond. Furthermore, the Defendants are neither an infant, nor incompetent person requiring special service in accordance with Fed. R. Civ. P. 4(g), nor are they members of the armed services of the United States entitled to the protection of 50 U.S.C. App. Section 520. *Id.* at ¶ 1(b). As such, Plaintiff is entitled to an entry of default against the Defendants.

### d. A Default Judgment is Proper

"A default judgment establishes, as a matter of law, that Defendants are liable to Plaintiff on each cause of action alleged in the complaint." *Deckers*, 2011 U.S. Dist. LEXIS 119448, at *6 (*citing United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989)). In addition, once the court "determines that a defendant is in default, the factual allegations of the Complaint - except those relating to damages - are taken as true and may not be challenged and the defendants are liable as a matter of law as to each cause of action alleged in the complaint." *Deckers*, 2011 U.S. Dist. LEXIS 119448 at *6 (*citing* Fed. R. Civ. P. 8(b)(6); *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994)). No responsive pleadings have been filed in this matter making default judgment

appropriate. Fed. R. Civ. P. 55(b)(2). The allegations of the Complaint are, therefore, taken as true. The Complaint alleges sufficient facts to establish the necessary elements of a claim under 15 U.S.C. §§ 1114, 1125(a), and 815 ILCS § 510, *et seq.*

Here, Plaintiff's factual allegations in the Amended Complaint establish the Defendants are liable to Plaintiff on each cause of action contained in the Amended Complaint. The Amended Complaint alleges that the Defendants have committed acts of trademark infringement and counterfeiting under 15 U.S.C. § 1114, false designation of origin under 15 U.S.C. § 1125(a), and violation of the Illinois Uniform Deceptive Trade Practices Act 815 ILCS § 510, et seq. ("DTPA").

The Amended Complaint alleges that Plaintiff has all rights to enforce the Plaintiff's Marks. The registrations are valid, subsisting, and in full force and effect. Amended Complaint at ¶ 14. The Amended Complaint further alleges that the Plaintiff's Marks are distinctive and identify the merchandise as goods from the Marks' owners. The registration for the Plaintiff's Marks constitutes prima facie evidence of validity pursuant to 15 U.S.C. § 1057 (b)." *Id.* at ¶ 14. The Amended Complaint also shows that the Defendants have engaged in acts of counterfeiting and unfair competition by offering for sale counterfeit versions of Plaintiff's Marks' products using a spurious copy of Plaintiff's Marks. *Id.* at ¶¶ 24-28.

As such, the allegations contained in the Amended Complaint, which must be taken as true due to Defendants' default under Fed. R. Civ. P. 55, are more than sufficient to establish that the Defendants are liable as a matter of law for each cause of action alleged in the Amended Complaint.

    e. **A Permanent Injunction is Proper**

To demonstrate entitlement to permanent injunctive relief, the movant must generally establish: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance

of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Am. Taxi Dispatch, Inc. v. Am. Metro Taxi & Limo Co.*, 582 F. Supp. 2d 999, 1005 (N.D. Ill. 2008), quoting *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 604 (7th Cir. 2007). As set forth below, permanent injunctive relief is appropriate here.

First, Plaintiff will be irreparably harmed because Defendants' actions, if allowed to persist, will continue to cause Plaintiff and the Marks' owners to suffer harm to its business reputation and harm as Defendants introduce more and more infringing products into the marketplace causing, *inter alia*, significant customer confusion. *See* Amended Complaint at ¶¶ 22, 23, and 29.

Defendants' counterfeit, infringing products, which carry Plaintiff's Marks, cause consumer confusion, fail to meet the expectations of consumers and cause devaluation of the Marks' brand and reputation, all of which irreparably harm Plaintiff. *Id.*; *Am. Taxi Dispatch, Inc.*, 582 F. Supp. 2d at 1005 ("The Seventh Circuit has 'clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy.'") (citation omitted); *Sprint Comm. Co. L.P. v. Chong*, No. 13- 38464, 2014 WL 6611484, at * 2 (S.D.N.Y. Nov. 21, 2014) ("permanent injunction was justified because the defendant's conduct has caused substantial and irreparable harm to Sprint, and will continue to cause substantial and irreparable harm to Sprint unless enjoined"). "[I]t is well-established in the Seventh Circuit that irreparable harm and inadequate remedy at law are presumed in trademark and trade dress infringement cases." *7-Eleven, Inc. v. Spear*, No. 10-CV-6697, 2011 WL 830069, at *6 (N.D. Ill. Mar. 3, 2011) (*quoting Dunkin' Donuts Franchised Restaurants LLC v. Elkhatib*, 2009 WL 2192753, at *4 (N.D. Ill. July 17, 2009)); *see also Eli Lilly & Co. v. Nat. Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000) ("Irreparable harm is generally

presumed in cases of trademark infringement and dilution.") (*citing Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 16 (7th Cir. 1992)) (recognizing the "well-established presumption that injuries arising from Lanham Act violations are irreparable, even absent a showing of business loss").

Second, there is no adequate remedy at law because absent permanent injunctive relief, Plaintiff would be forced to repeatedly file suit any time against the Defendants—who have shown disregard for their legal obligations and the jurisdiction of this Court —infringe Plaintiff's trademark rights in the future. *See Kinsey v. Jambow, Ltd.*, 76 F. Supp. 3d 708, 714 (N.D. Ill. 2014) ("Without a permanent injunction, the defendant will likely continue their infringing conduct"); *Con't. Airlines, Inc. v. Intra Brokers, Inc.*, 24 F.3d 1099, 1104-05 (9th Cir. 1994) ("the multiplicity of suits necessary to be engendered if redress was sought at law, all establish the inadequacy of a legal remedy and the necessity for the intervention of equity"). Plaintiff's lack of control over Defendants' unauthorized use of it trademark weighs in favor of granting permanent injunction. In sum, permanent injunctive relief is the only adequate remedy to prevent the continued threat of counterfeit and infringement.

Third, the balance of hardships weighs strongly in Plaintiff's favor as Plaintiff is threatened with significant irreparable injury if a permanent injunction is not issued. As explained in Plaintiff's Amended Complaint, Defendants' actions have resulted in irreparable harm to Plaintiff's reputation and goodwill. *See* Amended Complaint at ¶ 35. As a result, Plaintiff has lost, and continues to lose, potential consumers. Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities. *Id*.

Fourth, the public will benefit from this injunction because the public interest is advanced by enforcing faithful compliance with the laws of the United States and the State of Illinois. A

permanent injunction in this case is appropriate because the public interest lies in favor of upholding property interests in trademarks and preventing customer confusion. *Miyano Mach. USA, Inc. v. MiyanoHitec Mach., Inc.*, 576 F. Supp. 2d 868, 889 (N.D. Ill. 2008) ("the public interest is generally served by the enforcement of trademark laws as such laws prevent confusion among and deception of consumers;" granting injunction) (citation omitted); *Coach, Inc. v. 3D Designers Inspirations*, 70 F. Supp. 3d 942, 950 (C.D. Ill. 2014) (finding a permanent injunction will "not harm the public interest, but benefit the consuming public by eliminating deception as to the source and quality of products they buy from [the infringing party] and other potential [infringers] deterred by this order"); *Lettuce Entertain You Enterprises, Inc. v. Leila Sophia AR, LLC*, 703 F. Supp. 2d 777, 791 (N.D. Ill. 2010) ("Enforcement of trademark law serves the public interest by reducing consumer confusion") (citation omitted); *Davidoff & Cie. S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1304 (11th Cir. 2001) (holding a permanent injunction "is not adverse to the public interest, because the public interest is served by preventing consumer confusion in the marketplace."); *Two Men and a Truck Int'l, Inc. v. Two Men and a Truck Kalamazoo, Inc.*, No. 94-162, 1995 WL 549278, at *6 (W.D. Mich. July 24, 1995) (granting injunction and explaining that "[i]f defendants are permitted to continue using the mark, the public will become confused about where to go for the consistent standard and for assistance in the event of problems.") Here, there is no public interest in the improper and fraudulent sale of counterfeit and infringing products to the detriment of Plaintiff's dealers, retailers and consumers. To the contrary, the public has a strong interest in obtaining legitimate, non-counterfeit products for their needs, as opposed to the un-warranted, unauthorized, and illicit products being trafficked by the Defendants.

### f. Plaintiff is Entitled to Statutory Damages

Plaintiff is entitled to statutory damages of no less than $100,000 for each mark as per 15 U.S.C. § 1117(c)(2) for Defendants' acts of willful infringement of the Plaintiff's trademarks. Under 15 U.S.C. § 1117(c) provides that "plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits . . . an award of statutory damages". 15 U.S.C. § 1117(c). In cases of counterfeiting, plaintiffs are entitled to statutory damages of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold". *Id.* at § 1117(c)(1). In the event that "the court finds that the use of the counterfeit mark was willful" plaintiffs are entitled to "not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." *Id.* at § 1117(c)(2). Willful infringement "may be attributed to the defendant's actions where he had knowledge that his conduct constituted infringement or where he showed a reckless disregard for the owner's rights." *Deckers*, 2011 U.S. Dist. LEXIS 119448, at *11 (*quoting Lorillard Tobacco Co. v. S&M Cent. Service Corp.*, No. 03 C 4986, 2004 U.S. Dist. LEXIS 22563, 2004 WL 2534378, *7 (N.D. Ill. Nov. 8, 2004). Furthermore, knowledge may be inferred based on Defendant's conduct. *Id.*

1. **Defendant's Conduct was willful**

Here, Plaintiff's Amended Complaint alleges that "Defendant's activities constitute willful trademark infringement and counterfeiting under . . . 15 U.S.C. § 1114." Amended Complaint at ¶ 40. Furthermore, the Amended Complaint alleges that "Defendants, without any authorization or license, have knowingly and willfully used and continue to use Plaintiff's Marks in connection with the advertisement, distribution, offering for sale, and sale of counterfeit LELINTA, SAYFUT, FOCUSSEXY, DODOING, and YOULOVEIT products into the United

States and Illinois over the Internet." *Id.* at ¶ 23. Thus, willfulness is presumed in the instant case under 15 U.S.C. § 1117(e).

Even without the statutory presumption, it is clear that Defaulting Defendants' counterfeiting was willful. "Willful infringement may be attributed to the defendant's actions where he had knowledge that his conduct constituted infringement or where he showed a reckless disregard for the owner's rights." *Lorillard Tobacco Co. v. S & M Cent. Serv. Corp.*, 2004 LEXIS 22563, at *19-20 (N.D. Ill. Feb. 25, 2005). As such, knowledge need not be proven directly, but can be inferred from a defendant's conduct. *Id*. at 20. In the instant case, Defaulting Defendants clearly had knowledge that their activities constituted infringement or at least a reckless disregard for Plaintiff's rights in the Plaintiff's Trademarks.

Finally, District Courts have deemed counterfeiting willful when defendants default. See *Burberry Limited, et al. v. The Partnerships, et al*, No. 1:14-cv-08220 (N.D. Ill. Dec. 11, 2014) (unpublished) (Docket Nos. 44 and 45); *Oakley, Inc. v. The Partnerships, et al.*, No. 1:13-cv-02958 (N.D. Ill. June 17, 2013) (unpublished) (Docket Nos. 36 and 37).

### 2. Statutory Damages in the Amount of $1,000,000 per Defendant are Appropriate

The Lanham Act sets a broad range for statutory damages for willful counterfeiting and provides no guidance as to determining the actual damages award. *See* 15 U.S.C. § 1117(c)(2). "Courts assessing statutory damages under § 1117(c) have looked to case law applying the statutory damage provision of the Copyright Act, 17 U.S.C. § 504(c), for guidance." *Deckers*, 2011 U.S. Dist. LEXIS at * 13. The Seventh Circuit held that a court awarding statutory damages is "not required to follow any rigid formula but instead enjoys wide discretion." *Id.* The purpose of damages under § 1117(c) are to "ensure that the guilty party will not return to its former ways and

once again pollute the marketplace" and the damage should be sufficient to provide a deterrent. *Sands, Taylor & Wood v. Quaker Oats Co.*, 34 F.3d 1340, 1348 (7th Cir. 1994).

Here, Defendants are operating in China, and has undertaken steps to hide their identities and avoid enforcement of Plaintiff's trademark rights. *See* Amended Complaint at ¶ 19. As such, an award of $1,000,000 per mark is necessary to ensure that Defendants will not continue to engage in such acts.

In addition, courts have awarded high damage amounts where a defendant's counterfeiting activities attracted wide market exposure through Internet traffic or advertisement. *See Coach, Inc. v. Ocean Point Gifts*, 2010 U.S. Dist. LEXIS 59003, *15-16 (D.N.J. Jun. 14, 2010) (high damage awards in counterfeit cases were "due in part to the wide market exposure that the Internet can provide"); *Burberry Ltd. v. Designers Imports, Inc.*, 2010 U.S. Dist. LEXIS 3605, *28-29 (S.D.N.Y. Jan. 19, 2010) (damages amount based, in part, on "Defendant's ability to reach a vast customer base through internet advertising").

In similar cases involving willful Internet-based counterfeiting, courts have awarded significant damages, including up to the maximum provided by law, to the plaintiff to serve the purposes of: (1) deterring the defendant and others situated like him from bringing into commerce counterfeit goods, (2) compensating the plaintiff for damages caused by defendant's infringement, and (3) punishing the defendant appropriately for his counterfeiting activities. *See, e.g., Philip Morris U.S.A. Inc. v. Castworld Prods.*, 219 F.R.D. 494, 501 (C.D. Cal. 2003); *Burberry Limited, et al. v. The Partnerships, et al*, No. 14-cv-08220 (N.D. Ill. Dec. 11, 2014) (unpublished) (Docket Nos. 44 and 45) (awarding $2,000,000 in statutory damages per defendant); *Oakley, Inc. v. The Partnerships, et al.*, No. 13-cv-02958 (N.D. Ill. June 17, 2013) (unpublished) (Docket Nos. 36 and 37) (awarding $2,000,000 in statutory damages per defendant). Given the Court's clear discretion in determining the appropriate amount of the statutory damages award within the statutory limits

of 15 U.S.C. § 1117(c), Plaintiff respectfully requests the Court's entry of an award of one million dollars ($1,000,000) per Defaulting Defendant.

**V.      CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court enter default judgment against the Defendant and enter Plaintiff's proposed default judgment order.

DATED July 26, 2023                                  Respectfully submitted,

/s/ Ge (Linda) Lei
Ge (Linda) Lei
203 N. LaSalle St., Suite 2100
Chicago, IL 60601
Attorney No. 6313341
Linda.lei@getechlaw.com
312-888-6633

*ATTORNEY FOR PLAINTIFF
GUANGZHOU LUCK COMMERCE CO. LTD*
